**Electronically Filed
Intermediate Court of Appeals
30152
24-APR-2013
09:09 AM**

NOS. 30152 and CAAP-12-0000003

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


ROARING LION, LLC, a Montana Limited Liability Company;
DAVID COWAN and NATHALIE COWAN; UMANG P. GUPTA and
RUTH M. GUPTA, as Trustees of the Umang and Ruth Gupta Trust
under Trust Agreement dated January 18, 2000; and PAUOA BEACH 8
LLC, a Hawaii Limited Liability Company, Plaintiffs/Appellees,
v.
EXCLUSIVE RESORTS PBL 1, LLC, a Delaware Limited Liability
Company; and EXCLUSIVE RESORTS PBL3, LLC, a Delaware
Limited Liability Company, Defendants/Appellants,
and
PAUOA BAY PROPERTIES, LLC, a Delaware Limited Liability Company;
WHITE SAND BEACH LIMITED PARTNERSHIP, a Delaware Limited
Partnership; PAUOA BEACH REALTY LLC, a Hawaii Limited
Liability Company, JOHN DOES 1-50, Defendants/Appellees.


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 04-1-332)


MEMORANDUM OPINION
(By: Foley, Presiding Judge, Fujise and Ginoza, JJ.)

In this consolidated appeal, Defendants/Counterclaim Plaintiffs-Appellants Exclusive Resorts PBL1, LLC and Exclusive Resorts PBL3, LLC (collectively, ER Defendants) challenge two orders entered by the Circuit Court of the Third Circuit[1] (circuit court): (1) the October 1, 2009 "Findings of Fact,

_____

[1] The Honorable Greg K. Nakamura presided.

Conclusions of Law and Order Granting Plaintiffs' Motion To Enforce Settlement Agreement" (First Enforcement Order); and (2) the May 17, 2010 "Order Granting in Part Plaintiffs' Motion for Order to Show Cause Why [ER Defendants] Should Not Be Held in Contempt" (Second Enforcement Order).

The circuit court initially granted partial summary judgment in favor of the ER Defendants and against Plaintiffs/Counterclaim Defendants-Appellees Roaring Lion, LLC, David Cowan and Nathalie Cowan, Umang P. Gupta and Ruth M. Gupta, as Trustees of the Umang and Ruth Gupta Trust under Trust Agreement dated January 18, 2000, and Pauoa Beach 8 LLC (collectively, Plaintiffs). Thereafter, a settlement conference was held on July 10, 2008 (Settlement Conference) and a purported settlement agreement was placed on the record. The circuit court subsequently determined that the parties had entered into an enforceable settlement agreement and further ordered enforcement of the settlement agreement.

On appeal, ER Defendants contend that:

(1) the circuit court erred in holding that terms placed on the record at the July 10, 2008 Settlement Conference, along with post-conference negotiations, constituted an enforceable settlement agreement.

(2) the circuit court lacked jurisdiction to enter the Second Enforcement Order because the pending appeal of the First Enforcement Order divested the court of jurisdiction to materially and substantially change the First Enforcement Order.

We conclude that the circuit court erred in holding that the parties had entered into an enforceable settlement agreement. There being no enforceable settlement agreement, we need not reach ER Defendants' second issue on appeal regarding the circuit court's jurisdiction to enter the Second Enforcement Order.

## I.  BACKGROUND

The Plaintiffs and ER Defendants own real property in the Pauoa Beach subdivision (Pauoa Beach) of the Mauna Lani Resort in the County of Hawai'i.  ER Defendants, as subsidiaries of Exclusive Resorts, LLC, a world-wide "destination club," provide its members with access to luxury vacation homes, including homes in Pauoa Beach.  Plaintiffs sought to enjoin ER Defendants from operating the destination club in Pauoa Beach.  Plaintiffs and ER Defendants filed a number of motions and cross-motions, all of which were eventually disposed of by various stipulations and orders, including orders granting partial summary judgment in favor of ER Defendants.

Subsequently, on July 10, 2008, the circuit court facilitated the Settlement Conference with Plaintiffs and ER Defendants, which lasted all day.  The parties allegedly reached a preliminary settlement agreement that was read into the record.  As stated on the record, the agreement contemplated that the parties would work cooperatively to amend the Pauoa Beach covenants, conditions, and restrictions (Pauoa Beach CC&Rs), with the general intent that the changes would prevent any destination club or other similar entity from operating at Pauoa Beach Resort, except that the ER Defendants would be grandfathered.  In the course of putting the settlement on the record, counsel for the parties indicated that further work needed to be done to define or finalize certain terms.  For instance, the parties still needed to define more specifically "destination club."  Moreover, and importantly, the parties still needed to define and clarify the scope of the contemplated "grandfather clause," particularly in regards as to who could utilize the grandfather rights and who could be a "successor" to such rights.  The parties anticipated finalizing and submitting to the circuit court within thirty days a fully executed document reflecting the

3

settlement terms, and that the Pauoa Beach CC&Rs would be amended within one hundred and twenty days after signing the settlement document.

During post-settlement conference negotiations, the parties attempted to define the open terms. The parties eventually agreed on all terms except the scope of the grandfather rights. Although the parties drafted proposed amendments to the Pauoa Beach CC&Rs, the parties could not agree on the definition of "successors and assigns." Thereafter, ER Defendants refused to execute a written settlement agreement, asserting that the parties were unable to resolve essential terms left open when the settlement agreement had been put on the record at the Settlement Conference.

Plaintiffs filed a "Motion to Enforce Settlement Agreement" (Motion to Enforce), which the circuit court heard on July 21, 2009. On October 1, 2009, the circuit court filed its First Enforcement Order, holding that there was a valid and enforceable settlement agreement.

On October 30, 2009, ER Defendants filed a notice of appeal from the First Enforcement Order. This appeal was docketed as appellate case number 30152.

Subsequently, alleging that ER Defendants had failed to abide by the circuit court's First Enforcement Order, Plaintiffs filed a "Motion For Order to Show Cause Why [ER Defendants] Should Not Be Held in Contempt" (Contempt Motion). The circuit court heard the Contempt Motion on February 25, 2010. On May 17, 2010, the circuit court entered its Second Enforcement Order.

On July 1, 2010, ER Defendants moved to stay the First and Second Enforcement Orders. On August 18, 2010, the circuit court granted ER Defendants' motion to stay, pending appeal from both orders.

4

On December 1, 2010, the circuit court filed a purported final judgment, but when Plaintiffs appealed from the judgment, this court dismissed the appeal for lack of appellate jurisdiction.

On December 5, 2011, the circuit court filed an Amended Final Judgment to correct deficiencies in the final judgment. ER Defendants timely appealed from the Amended Final Judgment, including with respect to the Second Enforcement Order.

## II. STANDARD OF REVIEW

"A trial court's determination regarding the enforceability of a settlement agreement is a conclusion of law reviewable *de novo*." Assocs. Fin. Servs. Co. of Hawai'i v. Mijo, 87 Hawai'i 19, 28, 950 P.2d 1219, 1228 (1998).

> Where the evidence in the record shows that all the essential elements of a contract are present, a compromise agreement among the parties in litigation may be approved by the court and *cannot be set aside except on the grounds that would justify rescission*. Generally, in the absence of bad faith or fraud, when parties enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it.
>
> However, *since very important rights are at stake in most cases, appellate courts must strive to ensure that the purported compromise agreement sought to be enforced is truly an agreement of the parties*.
>
> *Miller v. Manuel*, 9 Haw. App. 56, 63, 828 P.2d 286, 291 (1991) (citations omitted) (emphases added), *cert. denied*, 72 Haw. 618, 841 P.2d 1075 (1992). "To determine the validity of the settlement agreement, the court looks to the totality of the circumstances surrounding the making of the agreement." *Ziarko v. Soo Line R.R.*, 161 Ill.2d 267, 204 Ill.Dec. 178, 186, 641 N.E.2d 402, 410 (1994). *Accord Scurry v. Cook*, 206 Ga. 876, 59 S.E.2d 371, 373 (1950).

87 Hawai'i at 28-29, 950 P.2d at 1228-29.

In Mijo, the Hawai'i Supreme Court also stated that "[w]hether the parties in fact entered into an agreement is essentially a question of fact." Id. at 28, 950 P.2d at 1228.

5

In that case, however, the lower court had held an evidentiary hearing in the course of deciding a motion to enforce a settlement agreement.

In Miller v. Manuel, 9 Haw. App. 56, 828 P.2d 286 (1991), where no evidentiary hearing was held in the lower court to resolve a motion to enforce a purported settlement agreement, this court held that it would review the lower court's order granting the motion to enforce a settlement as if it were a summary judgment ruling. Id. at 63-64, 828 P.2d at 291-92. "Thus, the question is whether the evidence presented to the trial court indicated that there was no genuine issue of material fact and that as a matter of law the parties had entered into a valid compromise agreement." Id. at 64, 828 P.2d at 292.

Because there was no evidentiary hearing held in the circuit court in this case, we will review the circuit court's First Enforcement Order as if it were a summary judgment ruling. Moreover, the parties agree on appeal that whether they entered into an enforceable settlement agreement is determined by a review of the statements put on the record at the July 10, 2008 Settlement Conference. Thus, the record is undisputed and we must simply determine whether the statements made at the July 10, 2008 Settlement Conference, as reflected in the transcripts from the Settlement Conference, establish that the parties agreed to the essential elements of an agreement.

## III. THE CIRCUIT COURT ERRED IN HOLDING THAT THERE WAS AN ENFORCEABLE SETTLEMENT AGREEMENT

ER Defendants contend that the July 10, 2008 Settlement Conference did not result in an enforceable settlement agreement because the parties had not come to a meeting of the minds on several essential terms, particularly as related to the grandfather rights. See Boskoff v. Yano, 217 F.Supp.2d 1077, 1088 (D. Haw. 2001) (quoting Honolulu Rapid Transit Co. v.

Paschoal, 51 Haw. 19, 27, 449 P.2d 123, 127 (1968) (to form a binding contract, there must be a meeting of the minds on all essential terms).

Neither party disputes that the grandfather rights to the ER Defendants and their affiliates, subsidiaries and successors is an essential term of the settlement agreement. Inamed Corp. v. Kuzmak, 275 F.Supp.2d 1100, 1122 (C.D.Cal. 2002) ("One measure of whether terms are 'material' is whether they have been the subject of debate and discussion during the course of the parties' negotiations."). However, the parties dispute whether they agreed on the scope of the proposed grandfather rights at the Settlement Conference. ER Defendants argue that because material and essential terms were missing, there was not a final and enforceable agreement. Boteilho v. Boteilho, 58 Haw. 40, 42, 564 P.2d 144, 146 (1977) ("To be enforceable[,] a contract must be certain and definite as to its essential terms."). "If an essential element of the promise is reserved for future agreement, there is no binding contract until the open point is resolved." Inamed Corp., 275 F.Supp.2d at 1120.

In this instance, although the parties indicated that they had a preliminary agreement and that there was "conceptual agreement" or "an agreement in principle" with regard to the grandfather rights, ultimately both sides recognized that they needed to further and more specifically define those rights. After the day-long Settlement Conference, the parties endeavored to put their agreement on the record and the transcript from the Settlement Conference reflects the following relevant parts of the settlement discussion:

> [PLAINTIFFS' COUNSEL]: Your Honor, the [p]arties agree that as a resolution of this matter, for now, the [p]arties will work cooperatively to pass a change in the CC&Rs relating to [Pauoa Beach] which are substantially similar to the following. And before I state the wording, the general intent is that the CC&R changes would prevent any

destination, ah, club or other similar entity from operating at [Pauoa Beach] in the future. Except that Exclusive Resorts will be grandfathered.

We anticipate that language substantially similar to the following to be used. With respect to [CC&Rs] section 15.4.13, it will be entitled time share vacation -- sorry, destination or other similar commercial entities are prohibited. No time share use or ownership plan, [(]to which HRS 514E applies[)], and no destination club or other similar commercial entity shall be permitted with respect to all or any portion of the property.

The grandfather provision for ER which will state that ER, which will be defined to include the affiliates within its control group --

THE COURT: It's within its control group or group?

[PLAINTIFFS' COUNSEL]: -- control group, has been operating a vacation club on its lots and units and may continue to do so despite the language set forth above. Upon the, ah -- as long -- I'm sorry, as long as ER continues to use the property as a destination club, whether ER owns the property or not, it will have the right and will not be prohibited from engaging in such activity. Once ER is no longer operating, all rights will cease.

. . .

THE COURT:  Do you have a definition for "destination club" or "vacation club"?

[PLAINTIFFS' COUNSEL]:  That's something that we are working on.

THE COURT:  Okay.  But the general principle would be, however, that ER is presently operating a destination or vacation club?

[PLAINTIFFS' COUNSEL]:  I believe it's a destination club.  And I believe at one point I misspoke and said "vacation club" when it should have been "destination club." But our intent is that we really do not want an ER like entity.  And we will take some time to work out the exact words on that.

. . .

[PLAINTIFFS' COUNSEL]:  I'm sorry, there is one additional item which I did not mention.  Um, if there is a change in control in ER, the CC&Rs will still stay in effect but the stand-down position and stay will end and we will come back to court to talk about further action in the litigation.

. . .

8

[ER DEFENDANTS' COUNSEL]: . . . [I]n the CC&Rs, what's grandfathered in is Exclusive Resorts and its -- I think was mentioned, affiliates, subsidiaries, also successors. And again, we are going to draft more specific language to detail what is meant by the phrase or the term ER, Exclusive Resorts, to implement the grandfathered provision. Because it's very important to our client who is grandfathered into what uses at Exclusive Resorts during the two-and-a-half year period.

[PLAINTIFFS' COUNSEL]: I think that we are in conceptual agreement here. I think that the concern that we have with respect to the use of the term "successor" is that we have no objection to an ER successor except if there was a change in control. We would have a problem with ER attempting to transfer its grandfathered rights to another vacation club or destination club.

[ER DEFENDANTS' COUNSEL]: As stand alone rights.

[PLAINTIFFS' COUNSEL]: As stand alone rights. And it's that wording that we're going to have to cobble together to define successor. But it does not allow ER to simply sell those lots or units at [Pauoa Beach] and allow somebody else to use them as a club.

THE COURT: Okay. Can we go off the record?

[Recess taken]

THE COURT: Alright, back on the record.

[PLAINTIFFS' COUNSEL]: Thank you.

[ER DEFENDANTS' COUNSEL]: I agree with Counsel that we have an agreement in principle. But the principle that we agreed to is basically that if Exclusive Resorts is sold completely, we have the benefit of the grandfather clause. If it's sold piecemeal, the right -- the grandfathered right being separated as a separate right to another entity, then the grandfather provision would terminate.

THE COURT: Okay.

[ER DEFENDANTS' COUNSEL]: That's the concept we'll be working on.

[PLAINTIFFS' COUNSEL]: And that's agreed.

THE COURT: Okay. Much different than I thought. Okay.

[PLAINTIFFS' COUNSEL]: Well -- and if they want to transfer lots or operations to another ER related entity, one of the subsidiaries, that would be fine. But if it was to a third party that would be the end of the grandfathered rights.

(Emphases added.)

9

There was clearly a lack of agreement between the parties as to the scope of the grandfather rights. ER Defendants indicated an expectation that they could transfer the grandfather rights if Exclusive Resorts was sold completely. Plaintiffs, on the other hand, stated their intention that grandfather rights not continue if there was a "change in control" of the ER Defendants, and that a transfer of lots or operations to a third party would terminate the grandfather rights.

A further indication that the discussion on the record did not represent a final and enforceable settlement agreement is that at the end of the Settlement Conference, the parties set up a status conference with the court three weeks hence to give the court an "update and see whether there is [sic] any clarifications or help of the Court that would be needed."

In its First Enforcement Order, the circuit court attempted to define the scope of the grandfather rights:

> [FOF 5.](d) Exclusive Resorts and its affiliates (including any affiliate within its control group) may continue to operate a destination club on its lots and units, notwithstanding the CC&R amendment during the stay period, as long as ER continues to use its property as a destination club, whether or not ER owns its lot or unit ("Grandfathered Rights"). Once ER is no longer operating at Pauoa Beach, all such Grandfathered Rights will cease. If ER is sold completely, ER's successor or assign in such case will have the benefit of the Grandfathered Rights. If ER is sold piecemeal to another entity, where the Grandfathered Rights are separated as separate stand alone rights, then the Grandfathered Rights terminate.
>
> . . .
>
> [FOF 5.] (k) If there is a change of control in ER, the CC&R amendment will remain in effect but the litigation stay and governmental stand-down will cease. . . .
>
> . . .
>
> [COL] 10. The transcript of proceedings of the July 10, 2008 Settlement Conference reveals that the parties agreed that if ER were sold "completely", then the transferee would have the benefit of the "Grandfathered Rights" as a successor or assign. On the other hand, if a Pauoa Beach subdivision lot or unit were transferred to a third party, but not as a "complete" sale, then the

10

> "Grandfathered Rights" would terminate as to that lot or
> unit. [CAAP-12-3] Tr. [7/10/08] at page 11, line 16 to page
> 12, line 11.

(Emphases added.) Even the circuit court's findings and conclusions are difficult to understand and in our view do not fully and accurately capture the parties' discussion at the Settlement Conference regarding the grandfather rights. It appears that, although the parties and the circuit court made a genuine and extended effort to have the parties reach a settlement agreement, there simply was no meeting of the minds between the parties on the specifics of the grandfather rights.

The purported agreement in this case is not sufficiently definite as to the essential terms related to the scope of the grandfather rights. Inamed Corp., 275 F. Supp. 2d at 1120-21; 17A Am. Jur. 2d Contracts § 181 (2004) ("To be enforceable, an agreement must be definite and certain as to its terms and requirements[.]"). The parties did not agree as to who the ER Defendants could transfer the grandfather rights and thus who could be a "successor" or "assign" to those rights. The purported agreement thus fails for indefiniteness as a matter of law. See Honolulu Waterfront Ltd. P'ship v. Aloha Tower Dev. Corp., 692 F. Supp. 1230, 1234-35 (D. Haw. 1988) aff'd, 891 F.2d 295 (9th Cir. 1989).

Therefore, given the lack of agreement about the scope of the grandfather rights, we conclude that the circuit court erred when it held that an enforceable settlement agreement had been entered into by the parties. Essential terms were left to be determined later and the parties were ultimately unable to agree on the terms.

In light of our determination that there was not an enforceable settlement agreement, we do not address ER Defendants' second point of error that the circuit court did not have jurisdiction to enter the Second Enforcement Order. That

11

is, without an enforceable settlement agreement in the first instance, there was no agreement to enforce.

## IV. CONCLUSION

Based on the above, the Amended Final Judgment filed on December 5, 2011 in the Circuit Court of the Third Circuit is vacated with respect to (1) the October 1, 2009 "Findings of Fact, Conclusions of Law and Order Granting Plaintiffs' Motion To Enforce Settlement Agreement" and (2) the May 17, 2010 "Order Granting in Part Plaintiffs' Motion for Order to Show Cause Why [ER Defendants] Should Not Be Held in Contempt," and each of these orders is likewise vacated. This case is remanded to the circuit court for further proceedings.

DATED: Honolulu, Hawai'i, April 24, 2013.


Robert G. Klein
R. John Seibert
Lisa W. Cataldo
(McCorriston Miller Mukai
  MacKinnon LLP)
for Defendants-Appellants

Margery S. Bronster
Rex Fujichaku
(Jae B. Park with them
  on the briefs)
(Bronster Hoshibata)
Attorneys for Plaintiffs-Appellees

Presiding Judge

Associate Judge

Associate Judge

12